## STATE OF CONNECTICUT *v.* ALEX MITCHELL
## (AC 31709)

DiPentima, C. J., and Beach and Flynn, Js.

Argued December 9, 2010—officially released March 29, 2011

*Richard W. Callahan,* special public defender, for the appellant (defendant).

*Rocco A. Chiarenza,* special deputy assistant state's attorney, with whom, on the brief, were *Scott J. Murphy,* state's attorney, and *Paul N. Rotiroti,* senior assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Alex Mitchell, appeals from the trial court's judgment of conviction, rendered after a court trial before *Sheldon, J.,* of one count of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A),[1] two counts of sexual assault in

---

[1] General Statutes § 53a-92 (a) provides in relevant part: "A person is guilty of kidnapping in the first degree when he abducts another person and . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually . . . ."

the first degree in violation of General Statutes § 53a-70 (a) (1),[2] and one count of attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49[3] and 53a-134 (a) (3).[4]

The defendant's principal claim is that the court improperly denied his motion to suppress the pretrial identification made by one of the victims, Monica V. Specifically, the defendant argues that the court made erroneous findings of fact in support of its finding that the pretrial, out-of-court identification was reliable.[5] We

[2] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

[3] General Statutes § 53a-49 (a) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[4] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he . . . (3) uses or threatens the use of a dangerous instrument . . . ."

[5] On appeal, the defendant claims only that the court erred when it found the out-of-court identification reliable despite the unnecessarily suggestive identification procedure. We, therefore, need not address the court's finding that the out-of-court identification procedure was unnecessarily suggestive per se. We do note, however, that the court incorrectly relied on the dissent in *Manson* v. *Brathwaite* in finding that any one-on-one show-up is unnecessarily suggestive. See *Manson* v. *Brathwaite*, 432 U.S. 98, 124–29, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977) (Marshall, J., dissenting). Because this issue is not raised on appeal and we agree with the court's finding that the identification was nonetheless reliable, we need not address this finding. Although the defendant titles his statement of the issues in his brief in terms of due process, his argument concerns fact-finding and does not make any due process argument under the factors set forth in *State* v. *Geisler*, 222 Conn. 672, 610 A.2d 1225 (1992), or under any pertinent federal case.

conclude that the court properly denied the defendant's motion to suppress. We further conclude that the court's determination that the identification was inherently reliable was supported by the facts it found and that the defendant has failed to show that these findings are clearly erroneous. We affirm the judgment of the trial court.

The trial court reasonably found the following facts. On August 17, 2004, at 11 p.m., the first victim, Monica V. (victim), left her job at the Walnut Convalescent Care Center in New Britain. After work, she began walking toward her apartment in New Britain and at about 11:30 p.m., while crossing the street she observed a black male in a red jersey shirt cross the street in the same westerly direction. While the victim paused in front of St. Mary's Church and contemplated calling a friend to pick her up for the balance of her walk home, she was grabbed from behind by the defendant, whom she had seen moments earlier. The victim held out her pocketbook to the defendant and told him to take whatever he wanted. When the defendant asked if she had an ATM card, she responded that she did not, but she offered him the few dollars she had. The defendant exclaimed, "[n]o bitch, that's not what I want," and pushed the victim from behind into the first alcove within an adjacent alleyway and forced her down into a squatting position. He also stated that he had a knife. The victim looked at the defendant's face, illuminated by the light in the alcove, and saw a young black man with cornrows in his hair, with white beads at the tips, wearing blue jeans, a white T-shirt and a red jersey. The defendant pinned the victim in the corner of the alcove, pulled down his pants, and told her that if she screamed he would slice her neck. He then forced her to perform oral sex. After a period of time, the defendant pulled the victim up and forcefully pushed her further down the alley into the second or third alcove and

ordered her to remove her shirt and bra or he would bash her head against the wall. She complied and then he pushed the victim down again, slapped her across the face, and forced her to perform oral sex again. The defendant forced her to perform oral sex for approximately forty minutes this time while touching her breasts. The assault ceased at around 12:30 a.m., when three men walked by the alleyway, the victim called out for help, and the defendant fled. The police were called, and the victim was transported to New Britain Hospital. While at the hospital, Officer Paul Uccello arrived to take a statement from the victim. She described her assailant as a black male in his early to late teens, cornrows in his hair with white beads at the tips and wearing a white T-shirt, blue jeans and a red jersey. After providing this description, and while she was providing her written statement, Uccello asked her if she would be willing to go to the police station "to look at somebody."

On August 18, 2004, at approximately 1 a.m., the second victim, Sara W. (second victim), left New Britain General Hospital and walked toward a friend's apartment. As she approached the Truman Overpass, she noticed a black male in a white shirt and white braids walking behind her. As she continued to walk over the overpass, she glanced behind her and noticed that the male had gotten closer to her. She heard footsteps and the clacking sound of beads just as the defendant tackled her to the ground from behind. The second victim saw the defendant, whom she described as a young male in his late teens, with cornrows in his hair and white plastic or wooden beads at the ends of his braids. After the defendant initially apologized, saying that he thought she was his sister's friend, she continued to walk but then the defendant grabbed her with his arm, choked her and demanded money. When the second

victim indicated she had no money, the defendant suggested she instead perform oral sex. She refused, and the defendant responded, "what if I make you do it, bitch?" as he grabbed her by the throat. The defendant released her for a moment, started to walk away and ordered her to continue in the other direction or he would kill her. She stood with her back against the wall of the overpass in fear, and responded, "f--- you," and the defendant came at her, grabbed her by the neck again, reached into his pocket and pulled out a three inch knife and slid it along her neck. A car drove by, causing the defendant to lower the knife, but then he demanded that the second victim show him her breasts "before I really decide to kill you . . . ." The defendant struck her across the face with the heel of his right hand and fled. She ran in the other direction and found people who escorted her to the police station. At the police station, she described her assailant as a young black male, with "swirly" cornrows with white beads in the front, and a white T-shirt.

Between 1:45 a.m. and 2 a.m., the defendant, who fit the general description of the young black male, with cornrows and white beads, was found walking on New Britain streets. The second victim was brought to the scene, where she viewed only the defendant and positively identified him as her assailant. The defendant was arrested and transported to the police station. At approximately 2:35 a.m., Uccello and the first victim arrived at the police station where she positively identified the defendant as her assailant in a one-on-one show-up.

Following the transfer of the two separate cases from the docket for juvenile matters to the regular criminal docket pursuant to General Statutes §§ 46b-122 and 46b-127, the defendant elected to be tried by the court, *Sheldon, J.*, in the judicial district of New Britain. The

two cases were consolidated at trial. The court concluded that the first victim's one-on-one show-up was unnecessarily suggestive but that it was inherently reliable and therefore admissible. The court convicted the defendant on all charges relating to the first victim and sentenced him to a term of twenty years imprisonment, execution suspended after twelve years, followed by thirty-five years of probation. This appeal followed.[6] Additional facts will be set forth as necessary.

"[A] claim of an unnecessarily suggestive pretrial identification procedure is a mixed question of law and fact." *State* v. *Marquez*, 291 Conn. 122, 137, 967 A.2d 56, cert. denied, 558 U.S. 895, 130 S. Ct. 237, 175 L. Ed. 2d 163 (2009). "[B]ecause the issue of the reliability of an identification involves the constitutional rights of an accused . . . we are obliged to examine the record scrupulously to determine whether the facts found are adequately supported by the evidence and whether the court's ultimate inference of reliability was reasonable. . . . [T]he required inquiry . . . is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is

---

[6] Two cases, the subjects of which were two different victims, were consolidated for trial. The defendant appeals from his conviction on docket number CR-04-0217392, the case pertaining to the first victim. At trial, on a separate docket number, CR-04-0217393, the case pertaining to the second victim, the court found the defendant guilty of attempt to commit sexual assault in the first degree in violation of §§ 53a-70 (a) (1) and 53a-49, attempt to commit robbery in the first degree in violation of §§ 53a-134 (a) (3) and 53a-49, and unlawful restraint in the first degree in violation of General Statutes § 53a-95, and sentenced the defendant to a term of twenty years imprisonment, execution suspended after ten years, followed by thirty-five years of probation. The trial court ordered the two sentences to run consecutive to one another, resulting in a total effective term of forty years imprisonment, execution suspended after twenty-two years, followed by thirty-five years probation, with special conditions. Although both victims made pretrial, out-of-court and in-court identifications, on appeal the defendant challenges only the identifications by the first victim. The notice of appeal refers to the two docket numbers, but the judgments of conviction refer to only one sexual assault. The defendant's brief, however, makes clear that he is only making a claim as to the first victim.

found to have been so, it must be determined whether the identification was nevertheless reliable based on an examination of the totality of the circumstances. . . . To prevail on his claim, [a] defendant has the burden of showing that the trial court's determinations of suggestivenesss and reliability both were incorrect. . . .

"Because the inquiry into whether evidence of pretrial identification should be suppressed contemplates a series of factbound determinations, which a trial court is far better equipped than this court to make, we will not disturb the findings of the trial court as to subordinate facts unless the record reveals clear and manifest error." (Internal quotation marks omitted.) *State* v. *Manson*, 118 Conn. App. 538, 543, 984 A.2d 1099 (2009), cert. denied, 295 Conn. 902, 988 A.2d 878 (2010), quoting *State* v. *Ledbetter*, 275 Conn. 534, 547–48, 881 A.2d 290 (2005), cert. denied, 547 U.S. 1082, 126 S. Ct. 1798, 164 L. Ed. 2d 537 (2006). "In determining whether identification procedures violate a defendant's due process rights . . . [t]he *defendant* bears the burden of proving both that the identification procedures were unnecessarily suggestive and that the resulting identification was unreliable." (Emphasis added; internal quotation marks omitted.) *State* v. *Ortiz*, 252 Conn. 533, 553, 747 A.2d 487 (2000).[7]

The defendant maintains that the court made clearly erroneous findings of fact in support of its determination that the victim's pretrial identification was reliable based on the totality of the circumstances. See *State* v. *Ledbetter*, 275 Conn. 534, 553, 881 A.2d 290 (2005), cert. denied, 547 U.S. 1082, 126 S. Ct. 1798, 164 L. Ed. 2d 537 (2006). The defendant principally challenges the court's

---

[7] At oral argument, the defendant conceded that in his brief he incorrectly stated that the state had the burden to prove by clear and convincing evidence that the identifications were reliable and independent from the suggestive taint of the show-up.

factual findings regarding the first two *Biggers* factors. See *Neil* v. *Biggers*, 409 U.S. 188, 199–200, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972).[8] He argues that the victim (1) did not have a substantial opportunity to view the defendant and (2) had a low degree of attention at the time of the crime. We are not persuaded.

"[R]eliability is the linchpin in determining the admissibility of identification testimony . . . . To determine whether an identification that resulted from an unnecessarily suggestive procedure is reliable, the corruptive effect of the suggestive procedure is weighed against certain factors, such as the opportunity of the [witness] to view the criminal at the time of the crime, the [witness'] degree of attention, the accuracy of [the witness'] prior description of the criminal, the level of certainty demonstrated at the [identification] and the time between the crime and the [identification]." (Internal quotation marks omitted.) *State* v. *Santos*, 104 Conn. App. 599, 619, 935 A.2d 212 (2007), cert. denied, 286 Conn. 901, 943 A.2d 1103, cert. denied, 555 U.S. 851, 129 S. Ct. 109, 172 L. Ed. 2d 87 (2008); see also *Manson* v. *Brathwaite*, 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977).

In support of its determination that the victim had an opportunity to view the defendant at the time of the crime, the court found the following facts. "[T]he identification was based upon the victim's observations of her assailant, off and on during a period of at least forty-five minutes in the light from the church alcoves,

---

[8] In *State* v. *Ledbetter*, supra, 275 Conn. 546 n.8, our Supreme Court referred to the factors for consideration in determining whether an identification is reliable under the totality of the circumstances as the *Biggers* factors. "[T]he factors to be considered . . . include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." (Internal quotation marks omitted.) Id., quoting *Neil* v. *Biggers*, supra, 409 U.S. 199–200.

which shone directly in the defendant's face as he faced her." During the assault, he pushed her into a squatting position, threatened her life, made her partially disrobe, and twice forced her to perform oral sex. The victim also saw the defendant in the light of the alleyway as she was pushed along on two occasions and as he ran away. Even though the attack occurred at night, on two occasions the victim had an opportunity to view the defendant's face while illuminated by lights. In further support of the court's determination that the victim had an opportunity to view the defendant, based on the aforementioned observations, the victim was able to provide a detailed description of the defendant. The trial court found that the victim's description of the defendant as a black male in his early to late teens, cornrows in his hair with white beads at the ends of the hair, wearing a white T-shirt, a red jersey and blue jeans was accurate.

The defendant argues that the victim did not have an opportunity to view her assailant because he grabbed her by her shoulders from behind, turned her around and pushed her into a crouch position. The defendant argues that she only saw his face for a split second, not several minutes. Our Supreme Court has said of identification that "a good hard look will pass muster even if it occurs during a fleeting glance." (Internal quotation marks omitted.) *State* v. *Cubano*, 203 Conn. 81, 95, 523 A.2d 495 (1987). Even if the victim only saw the defendant's face for a second, as the defendant suggests, that is still sufficient to support the court's finding that the victim had a substantial opportunity to view the defendant. Here, however, the victim saw the defendant for more than a split second. The court found that the identification was strong, made by the victim, who had a good opportunity to observe her assailant for a lengthy period of time, in more than adequate light, and had a strong reason to observe him carefully

at the time. The fact that the victim was grabbed from behind did not prevent her from viewing the defendant's face during her forty-five minute ordeal. We conclude, therefore, that the defendant has not met his burden of showing that the court committed clear error in concluding that the victim had a substantial opportunity to view him at the time of the crime.

In support of its determination that the victim had a high degree of attention, the court found the following facts. "[The victim's] degree of attention was obviously very high as she progressed from attempted robbery victim, to kidnapping victim, to forcible sodomy victim at the hands of her assailant. Although her glasses were knocked off her face during the second incident of compelled oral sex, she used them only for seeing at a distance, not seeing up close, and her assailant was literally on her and inside of her virtually throughout their encounter."

The defendant argues that the victim's degree of attention was low because she was fearful for her life and spent nearly forty minutes squatting and administering oral sex to the defendant adjacent to his jeans. We are not persuaded. The facts found by the court are adequately supported by the evidence. During the time the victim had the opportunity to view the defendant, the area was well lighted and she was in a close proximity to him. The court noted that this was not a chance encounter, but, rather, the observation of a person who was being sexually assaulted over a substantial period of time in an area with backlighting shining on the assailant's face. Additionally, in its order and articulation, the court found the victim to be credible beyond a reasonable doubt. We conclude, therefore, that the defendant has not met his burden of showing that the

court committed clear error in concluding that the victim's identification was reliable. Thus, the court's determination in admitting the pretrial identification was proper.[9]

The court properly considered all of the factors relevant to determining the overall reliability of the victim's identification. Even if some evidence in the record might have supported an opposite conclusion, the defendant has not shown that in determining that the identification was reliable, the court committed clear error in reaching the factual conclusions supporting that determination. Furthermore, because we upheld the court's conclusion that the victim's identification was reliable based on the totality of the circumstances, the defendant's arguments concerning suggestiveness do not provide a basis for overturning the court's decision to admit evidence of the victim's pretrial identification of the defendant. "To prevail on his claim, the defendant has the burden of showing that the trial court's determinations of suggestiveness *and* reliability both were incorrect." (Emphasis added; internal quotation marks omitted.) *State* v. *Cook*, 262 Conn. 825, 832, 817 A.2d 670 (2003).

We conclude that the court properly denied the defendant's motion to suppress. We further conclude that

---

[9] Although on appeal the defendant principally challenges the first two *Biggers* factors, we note that in regard to the third *Biggers* factor, the court found that the victim's description of her assailant, given prior to the identification procedure, matched the defendant in all material respects, such as his height, hair, race, age, cornrows and the beads in his hair. In regard to the fourth *Biggers* factor, the court found that the victim expressed a high degree of certainty at the time she identified the defendant as her assailant in front of the police station, particularly because she requested to have the defendant brought closer to her, consistent with a desire not to make an identification unless she was positive that the suspect was her attacker. Finally, regarding the fifth *Biggers* factor, the court found that the identification procedure took place less than three hours from the time of her assault.

the court's determination that the identification was inherently reliable was supported by the facts it found and that the defendant has failed to show that these findings are clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.