STATE OF CONNECTICUT *v.* GERALL GUTIERREZ
(AC 32372)

DiPentima, C. J., and Beach and Peters, Js.

Argued September 12—officially released November 22, 2011

*Thomas G. Wolff*, for the appellant (defendant).

*James M. Ralls*, senior assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III*, state's attorney, and *Deborah Mabbett*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Gerall Gutierrez, appeals from the judgment of the trial court revoking his probation. On appeal, the defendant claims that the court erred by (1) sustaining an objection to a question about the perpetrators' accents, (2) relying on witness statements that were not in evidence and (3) finding that he had engaged in conduct that violated his probation. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the defendant's appeal. On September 25, 2009, the defendant pleaded guilty to two counts of possession of marijuana in violation of General Statutes § 21a-279 (c). The court, *Reynolds, J.*, sentenced him to a total of two years incarceration, execution suspended, and two years probation.

Two days later, on September 27, 2009, the defendant was arrested and charged with assault in the third degree, robbery in the second degree, larceny in the second degree and breach of the peace in the second degree. The arrest stemmed from the following events, as testified to in the subsequent hearing. On September 26, 2009, Leonidas Gualan left his home at about 11 o'clock in the evening to eat at Kennedy Fried Chicken in Danbury. He stayed there between one and one-half to two hours. As he left the restaurant, two men approached him and hit him, kicked him and threw him to the ground. The men told Gualan that if he did not give them all of his money, they were going to kill him. Andres Mogrovejo, who was leaving another restaurant, saw Gualan getting hit and kicked. The assailants took approximately $700 from Gualan's wallet and ran. Mogrovejo approached Gualan and asked him what happened, to which Gualan replied: "They robbed me." Mogrovejo then observed the men trying to hide in a nearby parking lot, then run off. A woman who was nearby found Gualan's wallet and then called the police. Mogrovejo, a friend and other persons began following the men. One of the attackers, later identified as the defendant, stopped running. The police arrived shortly thereafter and arrested him.

On November 13, 2009, the defendant was charged with violation of probation pursuant to General Statutes § 53a-32 because of his alleged criminal activity. A violation of probation hearing was held on April 28 and 29, and May 21 and 27, 2010. Following the presentation of evidence, the court found that the defendant had violated his probation and sentenced him to two years incarceration. This appeal followed.[1] Additional facts will be set forth as necessary.

[1] On August 26, 2011, the state moved to dismiss the appeal on the ground that the defendant appeared to be a fugitive and has forfeited his right to appeal. According to the state's motion, following the defendant's sentencing on May 27, 2010, the court granted his motion for posttrial release on July 19, 2010. He posted bond and was released. Between July, 2010, and April,

I

The defendant first claims that the court abused its discretion when it excluded certain testimony of Gualan pertaining to the perpetrators' accents. Specifically, the defendant argues that a proper foundation was laid for admission of testimony that Gualan could recognize the perpetrators' accents as Caribbean or Dominican. We disagree with the defendant's claim.

The following additional facts are relevant. At the defendant's violation of probation hearing, Gualan, a witness for the state, testified, through an interpreter, on cross-examination that he did not speak English and was born in Ecuador. He further testified that there were many Spanish speakers at Kennedy Fried Chicken on the evening of September 26, 2009, and that there were various dialects and accents being spoken. After Gualan testified that his attackers demanded all of his money and threatened to kill him, defense counsel asked Gualan whether he could recognize their accents. Gualan replied: "Forgive me. When—when you are just with friends, it's—it's easier to—to recognize accents, but when you're in the middle of a fight, it's really difficult for someone to just recognize that." Defense counsel then inquired whether Gualan "recognize[d] whether the accent might have sounded like an accent

2011, the defendant appeared in court for other criminal cases pending against him. On April 13, 2011, he failed to appear in court in those cases, and the court ordered the defendant's rearrest. Relying on an e-mail from a bondsman to the state, the state filed its motion, claiming that the defendant had left the state, to which defense counsel asserted that he was prepared to stipulate.

We decline to decide the state's motion. The e-mail from the bail bondsman attached to the state's motion is not part of the record in this case. There is no finding that the defendant's appeal bond has been revoked, and he has not failed to appear in any proceeding connected to this appeal, so far as the record shows. The issue is not jurisdictional in nature. See *State* v. *Brabham*, 301 Conn. 376, 21 A.3d 800 (2011). Accordingly, we choose not to reach the merits of the state's motion but affirm the revocation of probation on other grounds.

from the Caribbean, like the Dominican." The state objected on the ground that the question had been asked and answered. The court sustained the objection, reasoning that Gualan "doesn't know, and . . . to ask him is impossible." Defense counsel responded that his question was not about what was possible but about whether the accent sounded Caribbean or Dominican. The court repeated its ruling that the objection was sustained.

The defendant argues that the state's objection should not have been sustained and that he should have been allowed to pursue the issue of accents because he laid a proper foundation and the testimony would have been permissible lay opinion. Our review of the record leads us to reject the defendant's claim. The defendant argues that he laid a proper foundation to inquire into Gualan's ability to recognize accents and that the subject is proper lay opinion. The court apparently held that a proper foundation had not been laid because under the circumstances, Gualan had not been able to discriminate among accents.

The state objected expressly on the ground that the question whether Gualan recognized the accents had been asked and answered; Gualan already had indicated that it was difficult to identify accents while being attacked. It appears from the context that the court believed that Gualan had indicated that he could not discriminate among accents reliably in the context of an attack. It was reasonable for the court to conclude that defense counsel's subsequent question about specific types of accents was repetitious because the witness had previously indicated that he did not know. A second question was therefore redundant, and the court did not abuse its discretion by sustaining the objection. "[T]he trial court is vested with wide and liberal discretion in determining the admissibility of evidence claimed to be repetitious, remote or irrelevant." *State*

v. *Reddick*, 33 Conn. App. 311, 318, 635 A.2d 848 (1993), cert. denied, 228 Conn. 924, 638 A.2d 38 (1994); see also *State* v. *Quinones*, 92 Conn. App. 389, 392, 885 A.2d 227 (2005) (rules of evidence do not strictly apply to probation hearings), cert. denied, 277 Conn. 904, 891 A.2d 4 (2006); *State* v. *Young*, 63 Conn. App. 794, 800, 778 A.2d 1015 ("[t]he process . . . is not so flexible as to be completely unrestrained; there must be some indication that the information presented to the court . . . has some minimal indicia of reliability"), cert. denied, 258 Conn. 903, 782 A.2d 140 (2001). Accordingly, we conclude that the court did not abuse its discretion by sustaining the state's objection to the defendant's question.

## II

The defendant next claims that the court erred by relying on witness statements that were not in evidence. We disagree.

The following additional facts are relevant. At the conclusion of the violation of probation hearing, the court found that the state had satisfied its burden of proving that the defendant violated the conditions of his probation. In its oral ruling, the court stated: "Mr. Gualan identified the defendant and indicated what the defendant had done . . . . The court further finds credible the testimony of Mr. Mogrovejo in that, again, the defendant was the individual who participated in the assault, robbery, and larceny against the victim, Mr. Gualan. Both parties indicated that they immediately identified the defendant. They identified him at the scene. . . . Those witnesses identified the defendant at the scene. They identified him with accuracy and in detail; that they identified him on a statement that was given thereafter. They identified him in court without hesitation and both offered those identifications." The defendant claims that because the court referred to "a

statement that was given thereafter" and because no witness statements were admitted into evidence, the trial court erred.

"A trial court initially makes a factual determination of whether a condition of probation has been violated. In making its factual determination, the trial court is entitled to draw reasonable and logical inferences from the evidence. . . . Our review is limited to whether such a finding was clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *State* v. *Hill*, 256 Conn. 412, 425–26, 773 A.2d 931 (2001).

The evidence supports a finding that a written statement was given to police, though the actual statement was not introduced into evidence, and that a separate oral description also was made. Gualan provided an oral description of his attackers to police the day after the incident. He also identified the defendant in the courtroom and testified that he recognized the defendant as soon as he saw him in the courtroom. Upon being asked whether there was any doubt as to whether the person he had identified in court was the person who assaulted him, Gualan responded: "No, I don't have any doubts." Further, Mogrovejo testified that he provided the police with a description of the assailants. He provided a written statement to the police about one and one-half months later. He also identified the defendant in the courtroom as the man who robbed and kicked Gualan and asserted that he was 100 percent sure. Police did not show Gualan or Mogrovejo any type of lineup.

The court perhaps may not have been precisely accurate in stating that the witnesses "identified [the defendant] on a statement . . . ." There was testimony, however, that Mogrovejo gave a written statement and Gualan gave an oral description of the culprit; the thrust of the court's recitation that the identifications were repeated and consistent was therefore justified by the evidence. The fact that one written statement was not in evidence is not precisely inconsistent with the court's summation and, in any event, even if the recitation is deemed to be slightly inaccurate, the inaccuracy was clearly harmless. The court found both witnesses' testimony credible, and "the trial court is the sole arbiter of witness credibility . . . ." *Blum* v. *Blum*, 109 Conn. App. 316, 329, 951 A.2d 587, cert. denied, 289 Conn. 929, 958 A.2d 157 (2008). Accordingly, we conclude that the court did not erroneously rely on statements that were not in evidence.

### III

The defendant finally claims that the court's finding that he violated his probation by committing assault, robbery and larceny was clearly erroneous. Specifically, the defendant claims that he lacked a motive to commit the crime, that the victim's and eyewitness' identifications of the defendant were unreliable and that the court failed to consider the entire record. We disagree.

"A trial court initially makes a factual determination of whether a condition of probation has been violated. In making its factual determination, the trial court is entitled to draw reasonable and logical inferences from the evidence. . . . Our review is limited to whether such a finding was clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the

entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *State* v. *Hill*, supra, 256 Conn. 425–26.

## A

The defendant's reliance on the presence or absence of a motive to commit the robbery, larceny and assault is misplaced. As the defendant asserts in his brief, "[i]t is not essential that the state prove a motive for a crime." *State* v. *Hoyeson*, 154 Conn. 302, 307, 224 A.2d 735 (1966). In support of his claim that he had no motive to commit the crime, the defendant relies on his receipt of unemployment benefits of $191 per week, the $278.51 balance in his bank account, his high grade point average at Porter & Chester School and the temporal proximity of this crime to his guilty plea to the disposition of marijuana charges. We cannot conclude in the present case that a lack of motive, even if true, would compel a "definite and firm conviction that a mistake has been committed"; (internal quotation marks omitted) *State* v. *Hill*, supra, 256 Conn. 425; such that a finding of fact would be clearly erroneous. The factors pertaining to the claim of a lack of motive raised by the defendant in his appeal were before the court, and presumably it considered them in its factual credibility determinations. Accordingly, we cannot conclude that the court erred.

## B

The defendant also argues that Gualan's and Mogrovejo's identifications of him were unreliable. We disagree.

The defendant challenges both the in-court and out-of-court identifications by Gualan. He claims that Gualan's in-court identification of the defendant was unnecessarily suggestive on the basis of the prosecutor's

questioning. After Gualan answered that the person who assaulted him was present in the courtroom, the following exchange occurred:

"[The Prosecutor]: Could you point him out for us?

"[The Witness]: Yes, he—he's the guy that was attacking me out there in front.

"[The Prosecutor]: And, that's the man you just pointed to, who's at the defense table?

"[Defense Counsel]: Well, I object, Your Honor. He didn't point to anybody.

"[The Prosecutor]: He—he went like this.

"[Defense Counsel]: He did not.

"[The Prosecutor]: Could you point to this—

"The Court: All right. Let's start—you know what? If there's an objection, I, of course where I am, I cannot see it. So, I'm sustaining the objection. You can ask your next question.

"[The Prosecutor]: Okay. This person who assaulted you outside the chicken place; is he in the courtroom today? Could you point to him, please, if he is?

"[The Witness]: Yes, the gentleman that's over there. He's the one that beat me."

The court noted for the record that Gualan identified the defendant.

The defendant claims that the prosecutor's question: "And, that's the man you just pointed to, who's at the defense table?" was unnecessarily suggestive and contributes to a definite and firm conviction that the court mistakenly found that the defendant committed the charged crimes. We disagree. At the time of the prosecutor's question, Gualan had already testified that one assailant was present in the courtroom. It at first was

disputed whether Gualan had pointed to the defendant. After the court indicated that it had not seen an identification, Gualan clearly did identify the defendant. Gualan testified that he recognized the defendant as soon as he saw him in the courtroom. Upon being asked whether there was any doubt as to whether the person he had identified in court was the person who assaulted him, Gualan responded: "No, I don't have any doubts." Further, the defendant had the full opportunity to cross-examine Gualan about his identification. See *State* v. *Smith*, 200 Conn. 465, 470, 512 A.2d 189 (1986) ("The defendant's protection against the obvious suggestiveness in any courtroom identification confrontation is his right to cross-examination. . . . The innate weakness in any in-court testimonial identification is grounds for assailing its weight rather than its admissibility." [Citations omitted.]).

Further, the defendant challenges the reliability of Gualan's out-of-court identification to the police shortly after the attack. He advances several reasons, including Gualan's lack of ability to perceive his assailants, Gualan's level of certainty and the suggestivity arising from Mogrovejo's pointing out the defendant to Gualan as the man who robbed him. The defendant also challenges the reliability of Mogrovejo's out-of-court identification. The court carefully weighed the testimony of each witness and found credible the testimony of Mogrovejo and Gualan. It further weighed a possible discrepancy in Mogrovejo's testimony about whether he ever lost sight of the defendant and explicitly found that it did not significantly detract from the reliability of the identification. "[T]he trial court is the sole arbiter of witness credibility . . . ." *Blum* v. *Blum*, supra, 109 Conn. App. 329; see also *State* v. *Mitchell*, 127 Conn. App. 526, 533, 16 A.3d 730 (admission of identifications is factbound determination trial courts better equipped than appellate courts to make), cert. denied, 301 Conn. 929, 23

A.3d 724 (2011). Accordingly, we do not have a "definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *State* v. *Hill*, supra, 256 Conn. 425.

### C

Finally, the defendant claims that the court failed to consider the entire record in making its determinations regarding his credibility and whether he violated his probation. He relies on the absence of references to his testimony and credibility in the court's findings of facts. We disagree. That the court did not explicitly mention these items does not reasonably imply that they were not considered. Rather, by finding credible the other witnesses' testimony, much of which was inconsistent with the defendant's testimony, the court implicitly indicated its assessment of the defendant's credibility. Our review requires us to make "every reasonable presumption . . . in favor of the trial court's ruling." (Internal quotation marks omitted.) Id., 425–26. Construing the evidence in the light most favorable to sustaining the factual findings, we cannot conclude that the court failed to consider the defendant's evidence.

The judgment is affirmed.

In this opinion the other judges concurred.