******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# EDWIN LEON, JR. *v.* COMMISSIONER OF CORRECTION
## (AC 41039)

DiPentima, C. J., and Alvord and Eveleigh, Js.

*Syllabus*

The petitioner, who had been convicted of manslaughter in the first degree with a firearm and carrying a revolver without a permit in connection with the shooting death of the victim, sought a writ of habeas corpus. He claimed that he was deprived of the effective assistance of counsel when, without his knowledge or consent, trial counsel stated during closing argument to the jury that the petitioner bore some responsibility for the victim's death and that the petitioner had been reckless. The petitioner had fatally shot the victim when he put a loaded and cocked handgun to her throat after they had returned home from a night of drinking. The petitioner testified that he and the victim had been arguing and that he had pulled out the gun to calm the victim down, but that the gun discharged. The petitioner thereafter was charged with, inter alia, murder. His trial counsel argued to the jury that although the petitioner was responsible for the victim's death, the shooting was not intentional and might have been the result of the petitioner's reckless behavior, and that the jury should find the petitioner guilty of the lesser included offense of criminally negligent homicide. The petitioner alleged ineffective assistance of trial counsel in his amended petition for a writ of habeas corpus. The habeas court analyzed the claim under the test set forth in *Strickland* v. *Washington* (466 U.S. 668) for determining whether a petitioner received ineffective assistance. The court rendered judgment denying the habeas petition, concluding that under *Strickland*, the petitioner failed to prove both that his trial counsel's performance was deficient and that he was prejudiced by that deficient performance. The court determined that although trial counsel breached his professional duty to consult with the petitioner before arguing to the jury as he did, counsel's actions did not come within the scope of the exception under *United States* v. *Cronic* (466 U.S. 648), which relieves a habeas petitioner of having to demonstrate prejudice when his counsel entirely fails to function as an advocate and does not subject the state's case to meaningful adversarial testing. The habeas court granted the petition for certification to appeal, and the petitioner appealed to this court. He claimed that trial counsel's statements to the jury violated his right to client autonomy under the sixth amendment and that the habeas court improperly determined that he had not been denied the effective assistance of counsel as a result thereof. *Held*:

1. This court declined to consider the petitioner's claim that his trial counsel's conduct violated his sixth amendment right to client autonomy; the petitioner's amended habeas petition did not explicitly or implicitly set forth a claim that his right to client autonomy was violated, all of the alleged constitutional violations in the habeas petition fell within the ambit of the solitary legal claim that was alleged, which was that the petitioner was denied his constitutional right to the effective assistance of counsel, the habeas court conducted its analysis under *Strickland* and focused solely on the ineffective assistance claim and did not address the right to client autonomy claim, and that court's reasoning supported the interpretation that the petitioner did not plead a violation of the right to client autonomy.

2. The habeas court properly determined that the petitioner was not deprived of the right to the effective assistance of counsel:

   a. The habeas court properly determined that *Strickland*, and not *Cronic*, applied and that the burden of demonstrating prejudice remained with the petitioner; the actions of the petitioner's trial counsel, which were reasonably calculated to further the petitioner's interest in avoiding a conviction of the more serious charge of murder, did not amount to nonrepresentation of the petitioner and, thus, warranted the application of *Strickland*, under which the petitioner bore the burden to prove that he was prejudiced as a result of any deficient performance by his counsel,

and the habeas court properly concluded that trial counsel clearly attempted to perform his duties as the petitioner's legal advocate and that there had been no complete failure of representation.

b. The petitioner's claim that the habeas court improperly concluded that he was not prejudiced by his trial counsel's statements to the jury was unavailing, the petitioner having failed to establish a reasonable probability that the result of the trial would have been different had counsel not made the challenged comments; it was very unlikely that the jury would have reached a different verdict even if the petitioner's trial counsel had not made the challenged comments during closing argument, as there was no dispute that the petitioner shot the victim and caused her death, the question was whether the victim's death was the result of an accident or conduct that rendered the petitioner criminally liable, the trial court instructed the jury on the crime of murder and lesser included offenses, and the state presented significant evidence that supported the jury's verdict of guilty of the lesser included offense of reckless manslaughter in the first degree with a firearm.

Argued November 28, 2018—officially released April 30, 2019

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Sferrazza, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Mark Rademacher*, assistant public defender, for the appellant (petitioner).

*Laurie N. Feldman*, special deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Michael J. Proto*, assistant state's attorney, for the appellee (respondent).

*Opinion*

DiPENTIMA, C. J. The focus of the petitioner Edwin Leon, Jr.'s, appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus is on the conduct of his criminal trial counsel during closing argument. On appeal, the petitioner claims that (1) that conduct violated his right to client autonomy under the sixth amendment to the United States constitution, and (2) the habeas court improperly determined that the petitioner had not been denied the effective assistance of counsel by that conduct. We conclude that the former was not pleaded or decided by the habeas court and therefore is not properly before this court. With respect to the latter, the petitioner's claim of ineffective assistance of counsel fails, as he did not establish prejudice. Accordingly, we affirm the judgment of the habeas court.

Following a jury trial, the petitioner was convicted of manslaughter in the first degree with a firearm (reckless indifference) in violation of General Statutes §§ 53a-55 (a) (3) and 53a-55a, and carrying a revolver without a permit in violation of General Statutes § 29-35. In affirming the petitioner's conviction, this court set forth the following facts which the jury reasonably could have found. "The [petitioner] and the victim, Krisann Pouliot, had been in a romantic relationship for three years and lived in the home of Pouliot's mother in East Hartford. On May 19, 2012, after a night of drinking and arguing, the [petitioner] and Pouliot returned home where the [petitioner] fatally shot Pouliot in the neck. The [petitioner] subsequently was arrested and charged in an amended long form information with murder in violation of General Statutes § 53a-54a and carrying a revolver without a permit in violation of § 29-35.

"A jury trial began on September 29, 2013, before the court, *Mullarkey*, *J*. The [petitioner] testified as to the following. On the night of the shooting, the [petitioner] and Pouliot drank a bottle of champagne before they left home for downtown Hartford at about 10 p.m. While downtown, the [petitioner] and Pouliot each consumed approximately four to five alcoholic beverages. The [petitioner] stated that when he went to downtown Hartford, he regularly carried a revolver due to incidents that had taken place there previously. The [petitioner] did not have a permit to carry a revolver. At some point while at various clubs in Hartford, the [petitioner] and Pouliot began to argue about the attention that the [petitioner] was paying to other women. Later that evening, the [petitioner] and Pouliot drove home, where the [petitioner] took the gun from the car and brought it upstairs. In their shared bedroom, the [petitioner] and Pouliot continued to argue with escalating intensity. At some point, the [petitioner] pushed Pouliot onto the bed, placed his left hand around her neck, and held his gun to her neck with his right hand. The

[petitioner] stated that he pulled out his gun to calm [Pouliot] down. With his left hand still around Pouliot's neck, the gun discharged and the bullet entered Pouliot's neck and exited, severing a finger on the [petitioner's] left hand.

"According to the [petitioner], after shooting Pouliot, he held her for a few minutes as she gasped for breath. The [petitioner] then picked up the gun, put on a sweatshirt, and left the premises without reporting the incident to anyone. The [petitioner] walked to his mother's house, which took him approximately forty-five minutes, during which time he did not summon help for Pouliot or alert anyone to the shooting. The [petitioner] testified that he never intended to shoot the gun and did not pull the trigger intentionally. After arriving at his mother's home, the [petitioner] told his mother, brother, and the mother of his child what had taken place, at which point the police were called. Matthew Martinelli, an East Hartford firefighter paramedic, testified that upon his arrival, it was immediately clear that Pouliot was not breathing and, after failing to detect a heartbeat, he determined that she was dead. . . .

"During defense counsel's closing argument to the jury, he stated: I suggest again that this was not intentional, and the circumstances surrounding this, I suggest, indicate that it wasn't intentional. I think he panicked after this happened. He should have gotten help immediately, but did not lawyer up, did not run, I mean, not run away, but he ran away from the scene, but he didn't try to run, he didn't flee the state, didn't do any of that, and told everybody who asked what happened. Stupid, maybe reckless, definitely stupid, in fact it's so stupid that I have trouble getting—wrapping my mind around that it was intentional. It was, you just—and the hammer back, carrying a weapon with the hammer back, he had no training, you heard him testify to that, no firearms training, obviously, because the first thing you're taught is, you don't do that, you don't carry a weapon with a round in the chamber, even.

"I'm asking that you consider when you are deliberating that there is a life that was lost and my client is responsible in some way, there's no question about that. The question is, responsible for what of the charges that you'll hear when the judge reads the charge. I suggest that this was an accident. It may have been reckless behavior, but it was not intentional. I'm suggesting that he certainly should be convicted on the gun and on criminally negligent homicide; there is a life lost, but again, in my mind this just does not appear, does not sound like an intentional shooting." (Emphasis omitted; footnotes omitted; internal quotation marks omitted.) *State* v. *Leon*, 159 Conn. App. 526, 528–31, 123 A.3d 136, cert. denied, 319 Conn. 949, 125 A.3d 529 (2015).

With respect to the homicide, the court instructed

the jury on the crime of murder, and the lesser included offenses of manslaughter in the first degree with a firearm (intentional), manslaughter in the first degree with a firearm (reckless indifference) and criminally negligent homicide. Id., 531. The petitioner was found not guilty of the murder charge, and guilty of manslaughter in the first degree with a firearm (reckless indifference) and carrying a revolver without a permit. Id. Following the verdict, the court sentenced the petitioner to a total effective term of thirty-one years imprisonment. Id. This court affirmed the petitioner's conviction on direct appeal.[1] Id., 527–28.

On September 23, 2014, the self-represented petitioner commenced the present action by filing a petition for a writ of habeas corpus. On November 7, 2016, habeas counsel filed an amended petition alleging the single legal claim of ineffective assistance of trial counsel. The habeas court, *Sferrazza, J.*, conducted a two day trial on April 11 and 25, 2017. On October 4, 2017, the habeas court issued a memorandum of decision denying the petition for a writ of habeas corpus.

The habeas court noted that in the amended petition, the petitioner had alleged that his criminal trial counsel, Attorneys Donald Freeman and Deron Freeman, had provided ineffective assistance. The basis for this allegation was Donald Freeman's concession, without the petitioner's knowledge or consent, during closing argument, that the petitioner bore some responsibility for the victim's death and that the petitioner had been reckless. The court reasoned that a lawyer's acknowledgment of the commission of some aspect of the state's allegations does not amount to ineffective assistance per se. Furthermore, in the absence of exceptional circumstances, the two part test of *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applied to a claim of ineffective assistance of counsel.

The habeas court recognized that, in rare situations, a petitioner is not required to demonstrate prejudice resulting from a lawyer's deficient performance. "If the exceptional circumstances are present, then the holding of *United States* v. *Cronic*, 466 U.S. 648, 659, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984), controls, and a habeas petitioner is relieved of the burden of proving that defense counsel's concessions actually prejudiced the petitioner."

The habeas court determined that the *Cronic* exception applies only when counsel entirely fails to function as an advocate and does not subject the state's case to meaningful adversarial testing. The court concluded that Donald Freeman's actions in the present case did not come within the scope of the *Cronic* exception and, therefore, the petitioner retained "his obligation to demonstrate defense counsel's deficient actions or inactions prejudiced him, as set forth under the second prong of the *Strickland* standard, before he can

prevail."

The habeas court then applied the relevant legal principles to the facts of the present case. First, it set forth the principal issue at the petitioner's criminal trial. "The incontrovertible evidence was that the petitioner's action in placing a loaded pistol against the victim's neck while engaged in a physical tussle resulted in her fatal shooting. The disputed issue was the petitioner's state of mind when he took that action."

Next, the habeas court considered the petitioner's argument that Donald Freeman had conceded his guilt without his consent. The court concluded that Donald Freeman had not informed the petitioner, prior to closing argument, of his intentions to state to the jury that the petitioner's actions of placing a loaded and cocked handgun to the victim's throat during a physical struggle was "definitely stupid and reckless." (Internal quotation marks omitted.) After reviewing the United States Supreme Court's opinion in *Florida* v. *Nixon*, 543 U.S. 175, 125 S. Ct. 551, 160 L. Ed. 2d 565 (2004), the habeas court concluded: "The trial advocate's duty, then, is to communicate timely and clearly to the defendant the reasons leading the attorney to acknowledge some responsibility on the part of the client and the benefits expected to accrue from that action. Counsel must consult with a defendant and seriously consider the client's position on the strategy before embarking on the course, but the client's consent is not a prerequisite for such a concession.

"To be clear, the court determines that Attorney Donald Freeman breached the professional duty to consult with the petitioner and receive his input, if any, before arguing as he did . . . . However, that determination does not conclude analysis of the performance prong of the *Strickland* test. The court must also resolve the question of whether the petitioner has proved, by a preponderance of the evidence, that conceding that the petitioner's reckless behavior contributed causally to the victim's demise falls outside of the broad spectrum of reasonable representation. Of course, the prejudice component of the *Strickland* criteria also remains to be determined." (Citation omitted.)

Ultimately, the court concluded that the petitioner had failed to sustain his burden of proving deficient performance by Donald Freeman. It also determined that the petitioner had failed to prove prejudice, the second prong of the *Strickland* test. Accordingly, the habeas court denied the petition for a writ of habeas corpus. Upon the habeas court's granting of the petition for certification to appeal, this appeal was filed. Additional facts will be set forth as necessary.[2]

I

The petitioner first claims that his defense counsel's conduct during closing argument of his criminal trial

violated his right to client autonomy under the sixth amendment to the United States constitution. Specifically, he argues that his defense counsel was constitutionally obligated to honor his choice to defend against the criminal charges filed by the state and was not permitted to override the petitioner's decision. Furthermore, the petitioner contends that this issue rises to the level of structural error and therefore is not subject to harmless error analysis.[3] In his reply brief, the petitioner relies on *McCoy* v. *Louisiana*, U.S. , 138 S. Ct. 1500, 200 L. Ed. 2d 821 (2018), which was released by the United States Supreme Court after he had filed his principal brief in the present case.

The respondent, the Commissioner of Correction, counters, inter alia, that "[t]he petitioner's attempt to cast his claim as one of client autonomy, rather than ineffective assistance, is a new invention on appeal which should not be entertained." Stated differently, the respondent argues that this court should not review the petitioner's client autonomy claim, as it was neither raised nor decided below, and, instead, we should limit our analysis to the claim of ineffective assistance of counsel, the sole issue presented to and decided by the habeas court. We agree with the respondent.

We begin our discussion with the following additional facts and detailed procedural history. The habeas petition initially filed by the self-represented petitioner specifically set forth a claim of ineffective assistance of counsel.[4] In the operative pleading, the amended petition filed by habeas trial counsel on November 7, 2016, the petitioner alleged a single claim of ineffective assistance of counsel.[5] In his pretrial brief, the petitioner explained that his criminal trial counsel had employed a tactic that deprived him of certain rights, and by doing so, effectively denied him the right to effective assistance of counsel. In his posttrial brief, the petition again identified his claim as an ineffective assistance of counsel claim.[6]

In its October 4, 2017 memorandum of decision, the habeas court analyzed the petition as raising a claim of ineffective assistance of counsel against Donald Freeman and Deron Freeman. It applied the two-pronged test of *Strickland* v. *Washington*, supra, 466 U.S. 687, for determining whether the petitioner had received ineffective assistance of counsel. It did not independently consider whether the petitioner's right to client autonomy had been violated.

In the petitioner's principal brief to this court, he claimed, for the first time, that "[t]his is a case about a criminal defendant's constitutional right to make the basic decisions regarding the objectives of his defense, including his right to choose whether to admit guilt in order to get a lesser sentence or to defend against the [charges], seek an acquittal, and insist that the state prove his commission of the crime beyond a reasonable

doubt." Later, he specifically argued that "[t]his case is not about the ineffective assistance of counsel or about whether an admission of guilt might sometimes be a reasonable strategy. *The client's autonomy, not the lawyer's competence, is at issue.*" (Emphasis added.) As a result of this specific constitutional violation, he requested that this court order a new trial.

After the petitioner had filed his initial brief with this court, the United States Supreme Court issued its decision in *McCoy* v. *Louisiana*, supra, 138 S. Ct. 1500. In that case, the defendant, Robert McCoy, was charged with shooting and killing the mother, stepfather, and son of his estranged wife in Louisiana. Id., 1505–1506. A few days later, police in Idaho arrested the defendant and he subsequently was extradited to Louisiana. Id., 1506. A grand jury indicted the defendant on three counts of first degree murder, and the prosecutor provided notice of intent to seek capital punishment. Id. "[The defendant] pleaded not guilty. Throughout the proceedings, he insistently maintained he was out of State at the time of the killings and that corrupt police killed the victims when a drug deal went wrong." Id.

The defendant initially had been represented by assigned counsel, but after that relationship had broken down irretrievably, his parents hired Attorney Larry English to represent their son. Id. "English eventually concluded that the evidence against [the defendant] was overwhelming and that, absent a concession at the guilt stage that [the defendant] was the killer, a death sentence would be impossible to avoid at the penalty phase." Id. When, two weeks before the trial, English informed the defendant that he planned to concede that the defendant had committed the killings, the defendant was " 'furious' . . . ." Id. The defendant specifically instructed English to refrain from making that concession and to pursue an acquittal. Id.

The trial court refused the defendant's request to end English's representation and to obtain a different lawyer. Id. During his opening statement to the jury, English, over the defendant's protest, conceded that the defendant had committed the three murders. Id. During the defendant's testimony, he maintained his innocence; however, during closing argument and at the penalty phase English again conceded to the jury that the defendant had killed the three victims. Id., 1507. The Louisiana Supreme Court affirmed the defendant's conviction, concluding that "[t]he concession was permissible . . . because counsel reasonably believed that admitting guilt afforded [the defendant] the best chance to avoid a death sentence." Id.

The United States Supreme Court concluded that the decision to determine whether the assertion of innocence, rather than avoidance of capital punishment, was the objective of the defense, belonged to the client and not the attorney. Id., 1508. "If, after consultations

with English concerning the management of the defense, [the defendant] disagreed with English's proposal to concede [that the defendant] committed three murders, it was not open to English to override [the defendant's] objection. English could not interfere with [the defendant's] telling the jury 'I was not the murderer,' although counsel could, if consistent with providing effective assistance, focus his own collaboration on urging that [the defendant's] mental state weighed against conviction." Id., 1509. Stated differently, "counsel may not admit her client's guilt of a charged crime over the client's intransigent objection to that admission." Id., 1510.

Next, the court distinguished the facts of *McCoy* from *Florida* v. *Nixon*, supra, 543 U.S. 175, because in *Nixon*, the client had been "generally unresponsive during discussions of trial strategy, and never verbally approved or protested counsel's proposed approach." (Internal quotation marks omitted.) *McCoy* v. *Louisiana*, supra, 138 S. Ct. 1509. The court also determined that claims of a violation of a client's autonomy, pursuant to the sixth amendment, are distinct from and not within the analytical framework of *Strickland* v. *Washington*, supra, 466 U.S. 668, or *United States* v. *Cronic*, supra, 466 U.S. 648. *McCoy* v. *Louisiana*, supra, 1510–11. "Here . . . the violation of McCoy's protected autonomy right was complete when the court allowed counsel to usurp control of an issue within McCoy's sole prerogative." Id., 1511. Finally, the court concluded that a violation of a client's sixth amendment autonomy right is not subject to harmless error review and constituted structural error. Id.

In his brief, the respondent argued that the petitioner had raised a "new" claim, distinct from what had been presented to the habeas court. Specifically, he contended that the petitioner had raised an ineffective assistance of counsel claim at the habeas trial. The respondent maintains that it is contrary to our jurisprudence to permit the petitioner to change course for the appellate proceedings and allow him to present a claim that the petitioner's right of autonomy had been violated.[7] Finally, the respondent stated that "[t]he United States Supreme Court did not invent a new theory in *McCoy* v. *Louisiana*, [supra, 138 S. Ct. 1500] . . . . Rather, it applied prior holdings on the right of autonomy and agreed with academic writings and state court decisions that a defendant has a right not to have counsel concede guilt over his objection . . . and that a violation of this right is structural error . . . . This autonomy theory was thus available to the petitioner." (Citations omitted.) The petitioner relied on *McCoy* in his reply brief. We agree with the respondent.

"It is well settled that [t]he petition for a writ of habeas corpus is essentially a pleading and, as such, it should conform generally to a complaint in a civil

action. . . . The principle that a plaintiff may rely only upon what he has alleged is basic. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint. . . . While the habeas court has considerable discretion to frame a remedy that is commensurate with the scope of the established constitutional violations . . . it does not have the discretion to look beyond the pleadings and trial evidence to decide claims not raised." (Internal quotation marks omitted.) *Adkins* v. *Commissioner of Correction*, 185 Conn. App. 139, 167, 196 A.3d 1149, cert. denied, 330 Conn. 946, 196 A.3d 326 (2018); see also *Nelson* v. *Commissioner of Correction*, 326 Conn. 772, 780–81, 167 A.3d 952 (2017); *Rodriguez* v. *Commissioner of Correction*, 131 Conn. App. 336, 351, 27 A.3d 404 (2011), aff'd, 312 Conn. 345, 92 A.3d 944 (2014). "The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Internal quotation marks omitted.) *Lewis* v. *Commissioner of Correction*, 166 Conn. App. 22, 32, 140 A.3d 414, cert. denied, 323 Conn. 905, 150 A.3d 679 (2016).

We have reviewed the November 7, 2016 amended petition for a writ of habeas corpus, the operative pleading in this case. The sole legal claim alleged therein is the ineffective assistance by the petitioner's criminal defense lawyers, Attorneys Donald and Deron Freeman. The amended petition further states that the ineffective assistance occurred due to (1) the concession of guilt without the petitioner's consent in violation of the fifth, sixth and fourteen amendments to the United States constitution, and article first, § 8, of the Connecticut constitution, and (2) that the concession of guilt violated the petitioner's rights to plead not guilty, to testify, and to have the state prove him guilty beyond a reasonable doubt.

The amended petition for a writ of habeas corpus does not, explicitly or implicitly, set forth a claim that the petitioner's sixth amendment right to client autonomy was violated by the actions of criminal trial counsel. As the United States Supreme Court made clear in *McCoy* v. *Louisiana*, supra, 138 S. Ct. 1510–11, a claimed violation of the right to client autonomy is separate and distinct from one of ineffective assistance of counsel. Here, all of the alleged constitutional violations fell within the ambit of the solitary legal claim alleged in the operative pleading, that is, that the petitioner had been denied his constitutional right to the effective assistance of counsel. "[T]he interpretation of pleadings is always a question of law for the court . . . . The modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . Although

essential allegations may not be supplied by conjecture or remote implication . . . the complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . As long as the pleadings provide sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the complaint is insufficient to allow recovery." (Footnote omitted; internal quotation marks omitted.) *Carpenter* v. *Commissioner of Correction*, 274 Conn. 834, 842, 878 A.2d 1088 (2005); see also Practice Book § 23-22.

Additionally, we note that in the habeas court's memorandum of decision, it focused its analysis solely on the claim of ineffective assistance of counsel, and did not address the claim that the petitioner's right to client autonomy had been violated. The court conducted its legal analysis through the lens of the two prongs of *Strickland*, performance and prejudice. The habeas court's reasoning supports our interpretation that the petitioner did not plead a violation of the right to client autonomy.

"This court is not bound to consider claimed errors unless it appears on the record that the question was distinctly raised . . . and was ruled upon and decided by the court adversely to the [petitioner's] claim. . . . This court is not compelled to consider issues neither alleged in the habeas petition nor considered at the habeas proceeding . . . ." (Internal quotation marks omitted.) *Adkins* v. *Commissioner of Correction*, supra, 185 Conn. App. 168–69; see also *Thiersaint* v. *Commissioner of Correction*, 316 Conn. 89, 126, 111 A.3d 829 (2015) (appellate review of claims not raised before habeas court would amount to ambuscade of that court); *Hankerson* v. *Commissioner of Correction*, 150 Conn. App. 362, 369, 90 A.3d 368 (well established that appellate courts will not entertain claims not presented to habeas court but raised for first time on appeal), cert. denied, 314 Conn. 919, 100 A.3d 852 (2014). Put differently, "[h]aving not raised [an] issue before the habeas court, [a] petitioner is barred from raising it on appeal." (Internal quotation marks omitted.) *Walker* v. *Commissioner of Correction*, 176 Conn. App. 843, 846 n.2, 171 A.3d 525 (2017).[8] For these reasons, we decline to consider the merits of the petitioner's claim that his sixth amendment right to client autonomy was violated in this case.

## II

The petitioner next claims that the habeas court improperly determined that he had not been denied the effective assistance of counsel. Specifically, he argues that the nature of the claimed deficient performance[9] warranted an application of the *Cronic* exception and, therefore, prejudice should have been presumed. In

the alternative, he claims that he established prejudice, contrary to the conclusion of the habeas court. The respondent counters that the habeas court properly (1) concluded that the prejudice presumption of *Cronic* did not apply and (2) determined that the petitioner had failed to establish prejudice. We agree with the respondent.

Before addressing the specifics of the petitioner's claim, we identify the relevant legal principles and our standard of review. Criminal defendants have the constitutional right to the effective assistance of counsel at all critical states of criminal proceedings. *Salmon* v. *Commissioner of Correction*, 178 Conn. App. 695, 702, 177 A.3d 566 (2017); see also *Kellman* v. *Commissioner of Correction*, 178 Conn. App. 63, 69, 174 A.3d 206 (2017) (axiomatic that right to counsel is right to effective assistance of counsel).

"A claim of ineffective assistance of counsel as enunciated in *Strickland* v. *Washington*, supra, 466 U.S. 668, consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . Our Supreme Court has stated that the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances, and that [j]udicial scrutiny of counsel's performance must be highly deferential. . . .

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. . . . To satisfy the second prong of *Strickland*, that his counsel's deficient performance prejudiced his defense, the petitioner must establish that, as a result of his trial counsel's deficient performance, there remains a probability sufficient to undermine confidence in the verdict that resulted in his appeal. . . . The second prong is thus satisfied if the petitioner can demonstrate that there is a reasonable probability that, but for that ineffectiveness, the outcome would have been different. . . . In making this determination, a court hearing an ineffectiveness claim [based on counsel's failure to investigate] must consider the totality of the evidence before the judge or the jury. . . . Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. . . .

"A petitioner's claim will succeed only if both prongs are satisfied. . . . Unless a [petitioner] makes both

showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unworkable. . . . A court can find against a petitioner, with respect to a claim of ineffective assistance of counsel, on either the performance prong or the prejudice prong, whichever is easier." (Citations omitted; internal quotation marks omitted.) *Kellman* v. *Commissioner of Correction*, supra, 178 Conn. App. 69–70.

In certain circumstances, however, a petitioner is relieved of the burden of proving prejudice. "In *United States* v. *Cronic*, [supra, 466 U.S. 659–60], which was decided on the same day as *Strickland*, the United States Supreme Court elaborated on the following three scenarios in which prejudice may be presumed: (1) when counsel is denied to a defendant at a critical stage of the proceeding; (2) when counsel entirely fails to subject the prosecution's case to meaningful adversarial testing; and (3) when counsel is called upon to render assistance in a situation in which no competent attorney could do so. Notably, the second scenario constitutes an actual breakdown of the adversarial process, which occurs when counsel completely fails to advocate on a defendant's behalf. . . .

"The United States Supreme Court has emphasized . . . how seldom circumstances arise that justify a court in presuming prejudice, and concomitantly, in forgoing particularized inquiry into whether a denial of counsel undermined the reliability of a judgment . . . ." (Citations omitted; internal quotation marks omitted.) *Taylor* v. *Commissioner of Correction*, 324 Conn. 631, 644–45, 153 A.3d 1264 (2017). Guided by these principles, we address the petitioner's specific claims in turn.

A

The petitioner first contends that the habeas court should have applied *Cronic* and presumed prejudice as a result of Donald Freeman's comments to the jury during closing argument. Specifically, he argues that "Freeman's admissions of [the] petitioner's guilt without consulting with [the] petitioner, who would have expressly directed counsel to the contrary, was a paradigm of a breakdown in the adversarial process under *Cronic*." The respondent counters that the habeas court properly determined that *Cronic*, and the corresponding presumption of prejudice, did not apply in the present case. We agree with the respondent.

*Cronic* established a narrow exception to the general two part *Strickland* test for determining whether a petitioner's constitutional right to the effective assistance of counsel has been violated. See *Smith* v. *Commissioner of Correction*, 89 Conn. App. 134, 137, 871 A.2d 1103, cert. denied, 275 Conn. 909, 882 A.2d 676 (2005). "*Cronic* instructed that a presumption of prejudice

applies in certain limited circumstances when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance of counsel is so small that a presumption of prejudice is appropriate . . . . The court explained that no showing of prejudice is required when counsel is either totally absent or prevented from assisting the accused during a critical stage in the proceeding, when counsel entirely fails to subject the prosecution's case to meaningful adversarial testing and when a defendant is denied the right of effective cross-examination. . . . The United States Court of Appeals for the Second Circuit has stated that [a]part from these rare instances . . . the *Strickland* two-part test of ineffectiveness generally applies. . . .

"The exception articulated in *Cronic* has become known as constructive denial of the assistance of counsel. . . . [C]ourts have been cautious in invoking *Cronic*'s dictum and its corresponding presumption of ineffectiveness. . . . [T]he [United States Court of Appeals for the] First Circuit has limited *Cronic*'s reach to extreme cases . . . the rare instance . . . and certain particularly egregious situations . . . . The United States Supreme Court recently emphasized just how infrequently the surrounding circumstances [will] justify a presumption of ineffectiveness . . . . *Florida* v. *Nixon*, [supra, 543 U.S. 175]." (Citations omitted; internal quotation marks omitted.) *Smith* v. *Commissioner of Correction*, supra, 89 Conn. App. 137–38.

The petitioner does not claim that he was denied counsel at a critical stage or that no competent attorney could have provided assistance in his circumstances; instead, he focuses his argument on the second *Cronic* scenario, that is, the petitioner's criminal trial counsel entirely failed to subject the state's case to meaningful adversarial testing. See, e.g., *Hutton* v. *Commissioner of Correction*, 102 Conn. App. 845, 855, 928 A.2d 549, cert. denied, 284 Conn. 917, 931 A.2d 936 (2007); see also *Davis* v. *Commissioner of Correction*, 319 Conn. 548, 555, 126 A.3d 538 (2015), cert. denied sub nom. *Semple* v. *Davis*, U.S. , 136 S. Ct. 1676, 194 L. Ed. 2d 801 (2016). "[C]ases have emphasized that the second *Cronic* exception is exceedingly narrow. . . . For it to apply, the attorney's failure must be complete. . . . [C]ourts have rarely applied *Cronic*, emphasizing that only non-representation, not poor representation, triggers a presumption of prejudice." (Internal quotation marks omitted.) *State* v. *Hutton*, supra, 856.

Our Supreme Court has noted that in determining whether *Cronic* or *Strickland* applies in a particular case, courts have held "that specific errors in representation, for which counsel can provide some reasonable explanation, are properly analyzed under *Strickland*. . . . Counsel's complete failure to advocate for a defendant, however, such that no explanation could possibly

justify such conduct, warrants the application of *Cronic*. . . . In the spirit of *Bell* [v. *Cone*, 535 U.S. 685, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002)], courts have drawn a distinction between maladroit performance and non-performance . . . by applying *Cronic* in cases where counsel's conduct goes beyond bad, even deplorable assistance and constitutes no representation at all . . . . Put differently, in ineffective assistance of counsel claims, prejudice may be presumed when counsel wasn't really acting as a lawyer at all." (Citations omitted; internal quotation marks omitted.) *Davis* v. *Commissioner of Correction*, supra, 319 Conn. 556.

In *Davis*, after the victim's family members spoke at the sentencing hearing following the petitioner's guilty plea, the prosecutor requested that the court sentence the petitioner to twenty-five years of incarceration, the maximum permitted under the plea. Id., 550–51. "Defense counsel immediately responded as follows: 'Your Honor, I agree with everything that everybody said so far, and I don't think there's anything left to say from my part." (Emphasis omitted; internal quotation marks omitted.) Id., 551.

The issue before our Supreme Court was whether defense counsel's complete agreement with the prosecutor's recommendation regarding the imposition of the maximum sentence, even though the plea agreement contained a provision allowing defense counsel to argue for a lesser sentence, required analysis under *Strickland* or *Cronic*. Id., 549–50. It determined that when defense counsel's agreement with the prosecution is reasonably calculated to further the interests of the defendant, courts apply *Strickland*. Id., 559. Stated differently, the relevant case law demonstrates "a willingness to apply *Cronic* when counsel agrees with the prosecution in a way that cannot reasonably be deemed to be in a defendant's interest." Id., 560.

Our Supreme Court concluded that a complete breakdown of the adversarial process had occurred in *Davis*. Id., 561. It noted that counsel did not advocate for the petitioner at the sentencing hearing, but instead agreed with the state's recommendation that the court impose the maximum sentence. Id. As a result, "defense counsel entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing . . . . Thus, we conclude that defense counsel's forfeiture of his right to argue for a lesser sentence to agree with the prosecutor's recommendation warrants application of *Cronic*." (Citations omitted; internal quotation marks omitted.) Id., 568.

The present case differs from *Davis*. Here, the actions of the petitioner's criminal trial counsel were reasonably calculated to further the petitioner's interest in avoiding a conviction of the more serious murder charge and did not amount to nonrepresentation of the petitioner. Thus, these facts and circumstances warrant

an application of *Strickland*, and not *Cronic*. Accordingly, prejudice is not presumed, but rather the petitioner bore the burden of proving that he had been prejudiced as a result of any deficient performance by Donald Freeman. The habeas court properly concluded that Donald Freeman "clearly attempted to perform his duties as the petitioner's legal advocate throughout the petitioner's criminal trial. There was no complete failure of representation, as required under the *Cronic* doctrine . . . ." (Internal quotation marks omitted.)

This conclusion is consistent with the reasoning of our Supreme Court in *Davis* v. *Commissioner of Correction*, supra, 319 Conn. 555–68, as well as federal case law. See *United States* v. *Thomas*, 417 F.3d 1053, 1056–59 (9th Cir. 2005) (*Cronic* did not apply where defense counsel's strategy was to concede guilt for one criminal charge without consultation or consent of defendant in order to enhance counsel's credibility for other counts where evidence was not as strong and punishment was significantly greater), cert. denied, 546 U.S. 1121, 126 S. Ct. 1095, 163 L. Ed. 2d 909 (2006); see also *Bell* v. *Cone*, supra, 535 U.S. 696–97 (defense attorney must entirely fail to test prosecutor's case for *Cronic* rule to apply). Thus, we conclude that the habeas court properly determined that *Strickland*, and not *Cronic*, applied in this case and that the burden of demonstrating prejudice remained with the petitioner.

B

Finally, the petitioner argues that the habeas court improperly concluded that he had not been prejudiced by Donald's Freeman's statements during closing argument. Specifically, he contends that the challenged comments to the jury eliminated any chance of the jury returning a not guilty verdict or a guilty verdict on the less serious offense of criminally negligent homicide. The respondent counters that the petitioner failed to demonstrate a reasonable probability that, but for Donald's Freeman's statements to the jury, the results of the criminal trial would have been different. We agree with the respondent.

We iterate that "[u]nder the two-pronged *Strickland* test, a defendant can only prevail on an ineffective assistance of counsel claim if he proves that (1) counsel's performance was deficient, and (2) *the deficient performance resulted in actual prejudice. . . . To demonstrate actual prejudice, a defendant must show a reasonable probability that the outcome of the proceeding would have been different but for counsel's errors*." (Citations omitted; emphasis added.) *Davis* v. *Commissioner of Correction*, supra, 319 Conn. 555; see also *Skakel* v. *Commissioner of Correction*, 329 Conn. 1, 40, 188 A.3d 1 (2018), cert. denied sub nom. *Connecticut* v. *Skakel*,     U.S.    , 139 S. Ct. 788, 202 L. Ed. 2d 569 (2019).

"[I]n making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or the jury. . . . Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. . . . [T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. . . . The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." (Internal quotation marks omitted.) *Anderson* v. *Commissioner of Correction*, 313 Conn. 360, 376–77, 98 A.3d 23 (2014), cert. denied sub nom. *Semple* v. *Anderson*,    U.S.    , 135 S. Ct. 1453, 191 L. Ed. 2d 403 (2015); see also *Spearman* v. *Commissioner of Correction*, 164 Conn. App. 530, 565, 138 A.3d 378 (petitioner must demonstrate reasonably likely result of proceeding would have been different), cert. denied, 321 Conn. 923, 138 A.3d 284 (2016).

In the present case, there was no dispute that the petitioner had shot the victim and caused her death. The question was whether her death had occurred as a result of an accident or conduct that rendered the petitioner criminally liable.[10] At the petitioner's criminal trial, the court instructed the jury, inter alia, as to the crime of murder and the lesser included offenses of manslaughter in the first degree with a firearm (intentional), manslaughter in the first degree with a firearm (reckless indifference) and criminally negligent homicide. *State* v. *Leon*, supra, 159 Conn. App. 531. The jury found him guilty of manslaughter in the first degree with a firearm (reckless indifference) in violation of §§ 53a-55 (a) (3)[11] and 53a-55a.[12]

In addressing the prejudice prong, the habeas court stated: "Assuming, arguendo, that Attorney [Donald] Freeman's approach was deficient, the court concludes that such deficiency played no role in producing the jury's guilty verdict to [manslaughter in the first degree with a firearm in violation of §§ 53a-55 (a) (3) and 53a-55a]. Having reviewed all the evidence, the result procured by Attorney [Donald] Freeman's efforts appears surprisingly successful.

"The petitioner's avowal that he brandished his loaded pistol to 'calm' the agitated victim strikes the court as ludicrous. The medical examiner definitively located the muzzle of the handgun against the victim's skin when fired. The petitioner admitted to drinking and arguing with the victim when the disagreement turned violent. The petitioner abandoned the victim,

still gasping for air, and sought no medical assistance for her. It is very unlikely that the jury would have reached a verdict other than the one it returned based on this evidence."

The state presented significant evidence that the petitioner had violated §§ 53a-55 (a) (3) and 53a-55a. The elements of this crime are as follows: "[T]he statute on manslaughter in the first degree . . . provides in relevant part: A person is guilty of manslaughter in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person. For the defendant to have been found guilty of this offense, the state had to prove beyond a reasonable doubt the following: (1) that the defendant engaged in conduct that created a grave risk of death; (2) that in doing so the defendant acted recklessly; (3) under circumstances evincing an extreme indifference to human life; and (4) the defendant caused the death of the victim. . . . Additionally, the state had to prove that the defendant had the general intent to engage in conduct that created a grave risk of death to another person under circumstances evincing extreme indifference to human life." (Internal quotation marks omitted.) *State* v. *Brown*, 118 Conn. App. 418, 423, 984 A.2d 86 (2009), cert. denied, 295 Conn. 901, 988 A.2d 877 (2010); see also *State* v. *Tomlin*, 266 Conn. 608, 625, 835 A.2d 12 (2003) (setting forth elements of reckless manslaughter in first degree with firearm).

There was evidence that, on the night of the shooting, the petitioner and the victim consumed alcohol and argued while at various nightclubs in Hartford. *State* v. *Leon*, supra, 159 Conn. App. 529. After returning home, the argument continued as the two went upstairs to their shared bedroom. Id. There, the petitioner pushed the victim onto the bed, placed his hand around her neck and held the gun to her neck. Id. The petitioner claimed that he undertook these actions in an effort to " 'calm' " the victim. Id. The gun discharged and a bullet entered and exited the victim's neck, also severing one of the petitioner's fingers. Id.

On the basis of this evidence, we agree with the habeas court that it was "very unlikely" that the jury would have reached a different verdict even if Donald Freeman had not made the challenged comments during closing argument. Simply stated, the petitioner failed to carry his burden of demonstrating that it was reasonably likely that the outcome of the trial would have been different. The evidence strongly supported the jury's verdict with respect to §§ 53a-55 (a) (3) and 53a-55a. See, e.g., *Buie* v. *Commissioner of Correction*, 187 Conn. App. 414, 422, 202 A.3d 453, cert. denied, 331 Conn. 905, 202 A.3d 373 (2019). Because the petitioner has not persuaded this court of the reasonable probabil-

ity that the result of the trial would have been different, we conclude that the habeas court properly determined that the petitioner was not deprived of the right to the effective assistance of counsel.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In his direct appeal, the petitioner claimed that "his counsel's decision to concede his client's guilt to the lesser included offenses during closing argument, without the [petitioner's] consent appearing on the record, violated the [petitioner's] right to plead not guilty, his right to testify, his right to have the state prove him guilty beyond a reasonable doubt and, finally, his right to have the effective assistance of counsel." *State* v. *Leon*, supra, 159 Conn. App. 531. This court emphasized that the petitioner's appellate claims were "predicated upon the . . . overarching claim of his counsel's ineffective assistance." Id. Accordingly, we affirmed the judgment on the basis of an insufficient evidentiary record. Id., 535–36.

[2] The respondent, the Commissioner of Correction, set forth an alternate ground for affirming the judgment of the habeas court. Specifically, he argues that the petitioner and the habeas court focused solely on the conduct of Attorney Donald Freeman. He further contends that the court never made a factual finding as to whether Attorney Deron Freeman ever consulted with the petitioner and obtained his consent to the strategy employed by Donald Freeman during closing argument. As a result of our conclusions in parts I and II of this opinion, we need not reach the respondent's alternative grounds for affirmance.

[3] The petitioner also claims that one of the habeas court's findings of fact was clearly erroneous. In its memorandum of decision, the habeas court stated: "[T]he petitioner testified that if Attorney [Donald] Freeman has discussed this type of concession [that occurred during closing argument] with him, he would have opposed that strategy. He avowed that he rejected a plea offer and chose to have a jury decide his fate. However, he also testified that he would have accepted a plea disposition involving a guilty plea to manslaughter [in the] second degree. . . . It appears to the court that Attorney [Donald] Freeman's summation substantially comported with the petitioner's position." (Emphasis omitted.)

The petitioner argues that the court's finding regarding his willingness to accept a plea bargain was clearly erroneous. We need not reach this claim, given our conclusions in parts I and II of this opinion.

[4] The petitioner identified his claim of an illegal conviction as resulting from ineffective counsel. He further explained: "My lawyer was ineffective. He had a conflict. He argued to my jury that I was guilty of the offense I was convicted of. He never told me he was going to do that. I never agreed to my lawyer['s] tactic. I did not consent to it."

[5] Specifically, the amended petition for a writ of habeas corpus set forth the following: "*Trial counsel's acts and omissions*, as described below, *fell below the level of reasonable competence required of criminal defense lawyers within the State of Connecticut. But for counsel's actions and omissions, it is reasonably probable that the results of Petitioner's criminal matter would have been different* in that Petitioner would not have been convicted of the crimes described herein. As a result of the foregoing, Petitioner is illegally confined by the Respondent for the following reasons:

"a. Trial counsel conceded guilt without Petitioner's consent in violation of Petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and article first, § 8, of the Connecticut Constitution.

"b. Trial counsel's concession of guilt violated Petitioner's right to plead not guilty, to testify, to have the state prove him guilty beyond a reasonable doubt, and effectively denied him the right to assistance of counsel in his chosen plea of not guilty." (Emphasis added.)

[6] Specifically, the petitioner's posttrial brief contains the following statement: "The Petitioner, through counsel, amended the Petition on or around November 7, 2016, raising a claim of ineffective assistance against trial counsel for conceding guilt without the Petitioner's consent in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article first, § 8, of the Connecticut Constitution, ultimately violating the Petitioner's right to plead not guilty, to testify, to have the state prove him guilty beyond a reasonable doubt, and to pursue his chosen plea of not guilty."

[7] The respondent specifically argued: "Because the petitioner framed his claim as ineffective assistance of counsel, and asserted deficient performance and prejudice, he cannot now reinvent his claim as not about ineffective assistance." (Internal quotation marks omitted.)

[8] We also note that in the petition for certification to appeal, the petitioner set forth the following issues: "1. Whether the court erred in finding that the Petitioner failed to prove ineffective assistance of counsel. 2. Whether the court erred in finding that there was no structural error or presumed prejudice. 3. Other such error or claims that arise out of a review of the transcripts and other records." Thus, the petitioner did not include a claim that his right to client autonomy had been violated in the petition for certification to appeal from the denial of his petition for a writ of habeas corpus.

[9] The habeas court determined that Attorney Donald Freeman had "breached the professional duty to consult with the petitioner and receive his input, if any, before arguing as he did [during closing argument]." Ultimately, the court concluded that the petitioner had failed to prove that Attorney Donald Freeman's conduct "fell below reasonable professional practice for defense lawyers." On appeal, the petitioner disagreed with this determination by the habeas court, arguing that Attorney Donald Freeman's performance had been deficient.

It is often stated that a habeas petitioner can prevail on a claim of ineffective assistance of counsel if he satisfies both the performance *and* the prejudice prongs of *Strickland*. See, e.g., *Francis* v. *Commissioner of Correction*, 182 Conn. App. 647, 652, 190 A.3d 985, cert. denied, 330 Conn. 903, 191 A.3d 1002 (2018); *Williams* v. *Commissioner of Correction*, 177 Conn. App. 321, 327, 175 A.3d 565, cert. denied, 327 Conn. 990, 175 A.3d 563 (2017). As a result of our conclusion in part II B of this opinion that the petitioner failed to demonstrate prejudice, we need not decide the performance issue. See *Williams* v. *Commissioner of Correction*, supra, 327.

[10] As the habeas court noted, "[t]he disputed issue was the petitioner's state of mind when he [engaged in a physical struggle with the victim and the gun discharged]."

[11] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

[12] General Statutes § 53a-55a (a) provides in relevant part: "A person is guilty of manslaughter in the first degree with a firearm when he commits manslaughter in the first degree as provided in section 53a-55, and in the commission of such offense he uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, shotgun, machine gun, rifle or other firearm. . . ."